JOHN F. DARBY, Plaintiff in Error, *v.* JOHN KNAPP, Executor of DELPHY CARLIN, deceased, Defendant in Error.

### June 19, 1876.

1. In an action by an attorney for services in defending a husband in a divorce and alimony suit, it is error to reject testimony offered by plaintiff to show the property and financial condition of his client. Such rejection is not justified by the fact that there was testimony tending to prove a special contract between the attorney and client.

2. Where an attorney is employed generally to guard his client's interests in a particular matter, and bestows labor in investigations which lead to the conclusion that his client has no real interest in the matter, he is entitled, nevertheless, to compensation for his services.

3. If the plaintiff prove the services on account of which he sues, but introduces no proof of their value, the jury may, from their own knowledge of the business and affairs of society, fix a reasonable value, and find a verdict in his favor accordingly.

ERROR to St. Louis Circuit Court.

*Reversed and remanded.*

*John F. Darby*, plaintiff in error, *pro se.*

*Cline, Jamison & Day*, for defendant in error.

LEWIS, J., delivered the opinion of the court.

Plaintiff presented for allowance, in the Probate Court, his account against the estate of defendant's testator for professional services as attorney at law, and for moneys paid on the testator's account during his life-time. The Probate Court refused an allowance, whereupon the plaintiff appealed to the Circuit Court, where the cause was tried before a jury. Verdict and judgment were rendered in favor of the defendant.

The charges in the account amounted to $1,550 for professional services, and $1,727 for moneys paid—making in all $3,277. The credits, all being cash payments, amounted to $2,427, leaving a balance claimed of $850. The three following items, among those of services rendered, constitute chiefly the basis of the present controversy :

"To drawing bill for divorce against Mary Carlin, and prosecuting said suit to final judgment, and obtaining decree of divorce, throughout, etc., $500.

"Drawing copy of bill of Mary Carlin against you and sending to you, and drawing your answer to the same, and defending said suit successfully for D. Carlin, and, as his counsel, having the bill dismissed, $500.

"Services rendered you in the case of Mad. Huth in defending the suit, and assistance in the same, and in the Supreme Court against her claim for dower to land in Carondelet, $250."

It appears from the testimony that the divorce suits were closely contested, and that the services rendered in them by the plaintiff were highly valued by the testator, to whom the terms of the decree, with reference to alimony, were more favorable than he had anticipated. In the course of the trial the plaintiff offered to prove the value of Mr. Carlin's estate at the time of the divorce proceedings. Upon defendant's objection this testimony was excluded, and the plaintiff excepted.

This ruling was erroneous. In every divorce suit where alimony is decreed, the value of the husband's estate becomes an essential element in estimating the amount to be decreed, against him. The ratio which the one shall bear to the other is usually a matter of controversy engaging the most earnest efforts of opposing counsel. The best service to be rendered by the attorney for the husband consists in getting the alimony fixed at the lowest possible ratio to the amount of his client's whole estate. There is no settled rule of proportion. Much will depend upon the

social standing of the parties, their habits of life respectively, the productiveness of the husband's capital, and even on the respective derelictions of the parties from marital duty. These, and other elements, invite much skillful handling on either side of the contest. If the husband be worth $100,000, and the alimony be $2,000 per annum, it cannot be denied that such a decree is more favorable to him than the same would be against a man worth only $5,000. Thus the pecuniary condition of the husband furnishes a starting point for estimating the skill of his attorney, and the value of the latter's services in procuring a minimum decree. It may be true, as defendant's counsel suggests, that here "the value of the attorney's services is controlled by the wealth of his client;" but this is because of the peculiar nature of the service. In ordinary suits the amount of the recovery bears no necessary relation to the means of either party, but in divorce and alimony proceedings there is always such a relation—the one inevitably tending to control the other. If, then, the jury in the present case were to estimate the value of the plaintiff's services, he had a right to show them, if he could, that the wealth of his client was such as to have evoked a larger assessment of alimony but for the skillful advocacy that prevented. This subject was fairly elucidated at the trial by the testimony of an eminent attorney, since deceased. He said: "The charges for professional services in obtaining a divorce, wherein the questions of support and alimony would come in, were governed in a measure by the value of the estate and financial condition of the husband. * * * In all suits for divorce, alimony, and maintenance, the pecuniary condition of the husband formed a very essential basis for the consideration of the court, and professional services in such litigation were to be measured and charged for somewhat as to the value and extent of the estate, and the talent and ability of the counsel to protect it from being wrongfully assessed."

But it is insisted for defendant that the plaintiff could not have been injured by the exclusion of this testimony, since it was shown that the divorce services were rendered under a special contract. The evidence of a special contract was, at best, inferential, and anything but conclusive. The jury might well have found, from all that was before them, either that there was, or was not, a specific understanding of what the plaintiff was to receive. Under such circumstances it is erroneous to deprive the jury of any legitimate guide to a correct conclusion upon the one or the other alternative. It would be easy to show, by a computation if necessary, that a sufficiency of the other debit items in plaintiff's account were proved by direct testimony to make his right of recovery, in any sum at all, depend upon the estimated value of his services in the divorce cases, so that the verdict for defendant could well have resulted from a low estimate attached by the jury to those services. Such a result is attainable even after limiting the plaintiff's compensation in Mrs. Carlin's suit to $200, the amount which, as some of the testimony tended to show, was all that he had formerly demanded.

The court, at the instance of defendant, gave an instruction, as follows:

" The jury are instructed that there is no evidence in the case showing the value of any services rendered by the plaintiff in the case of *Huth* v. *Carondelet Dock Company*, and you must so find."

This was erroneous, as being calculated to mislead the jury into a belief that they could not lawfully allow the plaintiff any sum for the services mentioned. The testimony tended to show that the plaintiff was employed by the testator to guard his interests, as they might be affected by the suit of Mad. Huth for dower in lands which the testator had conveyed; that the plaintiff bestowed labor in investigating the matter accordingly, and in frequently advising with the counsel already employed in the suit.

The testator's interests may really have been in no jeopardy. But if, nevertheless, the plaintiff was employed by the testator only to ascertain that fact, he was entitled to some compensation for the service rendered in so doing. In order to do this it was not necessary for the plaintiff to prove, by specific or direct testimony, the value of such service. In *Craig* v. *Durrett*, 1 J. J. Marsh. 365, and in *Baum* v. *Winston*, 3 Metc. (Ky.) 127, affirming the former, it was held that, in an action to recover the value of work and labor, the jury have a right, in the absence of all proof of the value of such labor, and from their own knowledge of the ordinary transactions and business of society, to find a verdict for the price of the work done, and for which the action was brought. In *Mattocks* v. *Lyman*, 16 Vt. 113, it was decided that, " if the plaintiff show to the jury that he has performed services for defendant, but his testimony leave uncertain the amount which he is entitled to recover therefor, this will not preclude his right of recovery, but the jury may allow him such sum as they deem the services reasonably worth."

Judge GANTT not sitting, and Judge BAKEWELL concurring, the judgment is reversed and the cause remanded.